USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/11/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA STEWART, on behalf of herself and all
others similarly situated,

                                    Plaintiff,

        -against-

RIVIANA FOODS INC.,

                                    Defendant.

No. 16-CV-6157 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Melissa Stewart ("Stewart"), a resident and citizen of New York State, filed this

purported class action, alleging that Defendant Riviana Foods, Inc. ("Riviana") violated Sections

349 and 350 of the New York General Business Law ("N.Y. GBL") by engaging in deceptive

marketing practices.  Defendant Riviana[1] is a Texas corporation[2] that advertises, distributes,

markets, and sells its pasta products throughout New York State.[3] Stewart contends that Riviana

has engaged in a deceptive packaging scheme that misleads consumers into believing its healthy

pasta boxes contain the same net weight of product contained in "traditional" pasta boxes.

Specifically, Defendant allegedly packages only 12 ounces of healthy pasta in "the same iconic

boxes" traditionally sized and priced to contain 16 ounces (i.e., one pound) of product, as to induce

consumers into paying a premium for healthy pasta without realizing that they are purchasing less

---

[1] On January 13, 2017, the parties filed a joint stipulation agreeing to amend the caption of the instant action "to reflect the change in corporate status and the name of defendant from New World Pasta Company to Riviana Foods, Inc." (See ECF No. 12.)

[2] Based in Houston, Texas, Riviana "is a wholly-owned subsidiary of Spanish food giant, Ebro Foods, S.A. ("Ebro"), a multinational food group operating in the rice, pasta, and sauces sector." (Compl. (ECF No. 1) ¶ 16.) "Ebro is the global sales leader in the rice sector and is the second largest pasta manufacturer in the world." (Id.)

[3] These facts are drawn from Plaintiff's complaint, and the Court assumes their accuracy for the purpose of considering dismissal under Fed. R. Civ. P. 12(b)(6). Lafaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009).

product.  Riviana now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (ECF No. 16.)  For the reasons stated below, Defendant's motion is GRANTED .

## BACKGROUND

In considering a Rule 12(b)(6) motion, a court is limited to the facts alleged in the complaint and is required to accept those facts as true.  *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  A court may, however, consider documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying that rule to district courts); *accord Wechsler v. HSBC Bank USA, N.A*, No. 15-CV-5907 (JMF), 2016 WL 1688012, at *1 (S.D.N.Y. Apr. 26, 2016), *aff'd* 674 F. App'x 73 (2d Cir. 2017).  Accordingly, the following facts are taken from the complaint and exhibits attached thereto or incorporated by reference therein.

Defendant Riviana Foods, Inc. is "a leading manufacturer and distributor of dry pasta in the United States," including Ronzoni®, one of the company's flagship brands.  (Compl. (ECF No. 1) ¶¶ 3, 16-17.)  Ronzoni pasta is "an iconic American brand," and at one point was the "number one pasta in the New York market, the largest pasta market in the United States." (*Id*. ¶¶ 4, 2).  Ronzoni has been sold to multiple generations of consumers – for more than 100 years – and at one point was the "number one pasta in the New York market."  (*Id*. ¶¶ 4, 18.) "Ronzoni pastas continue to have a major industry market share." (*Id*. ¶ 4.)

According to the Complaint, Ronzoni pasta – specifically the processed white flour variety – has been sold "for decades" in the same "iconic" boxes. (*Id.* ¶¶ 5, 15.)  The hallmark packaging consists of "thin blue and yellow," (*id.* ¶ 26), "cardboard boxes of a uniform dimension"[4] (*id.* ¶ 6), filled with "approximately 16 ounces net weight of pasta" (*id.* ¶¶ 6, 15).  The front panel of these long rectangular boxes features a small transparent window above the net weight, which is printed in small white text on the bottom right-hand corner.  (*Id.* ¶ 6; Pl.'s Mem. Law Opp'n Def.'s Mot. To Dismiss (ECF No. 18) ("Pl.'s Mem.") 17.)

*Figure 1:* Front Panel



Plaintiff alleges that, "[t]hese Ronzoni boxes have become ubiquitous in the marketplace over the past century as competitors have marketed their own dry pasta products in substantially the *same size* rectangular box filled with the *same volume* of dry pasta." (*Id.* ¶ 7) (emphasis added). While Ronzoni® Thin Spaghetti (referred as "traditional pasta" or "white flour pasta") is a "hallmark product" (meaning "instantly recognizable to millions of American consumers") (*id.* ¶ 5), Ronzoni sells a wide variety of other white flour pasta styles besides spaghetti including, but

---

[4] The "standard dimension box is approximately 10 5/8 inches long, 2 ¾ inches wide, and 1 ¼ inches deep." (Compl. ¶ 5.)  Though Defendant offers image of the box allegedly at issue in this case, even assuming the boxes are nearly identical except for the differences alleged by Plaintiff, the claims still fail as discussed herein.

not limited to, large shells, penne, rotelli, and elbows. (*Id.* ¶ 6.) No matter the style, Ronzoni processed white flour products are "generally packaged in cardboard boxes of a uniform dimension," (*id.* ¶ 6), and "[t]hese packages historically had been filled with 16 ounces (net weight) of Ronzoni pasta product" (*id.* ¶ 23; *see also* Pl.'s Opp'n at 3). "Consequently, consumers have come to rely upon the 'standard size and standard volume' packaging when making purchasing decisions, particularly because the contents were and are not fully visible in the non-transparent cardboard packaging." (*Id.* ¶ 7.) Stated differently, as alleged by Plaintiff, consumers of Ronzoni pasta "have long been accustomed to receiving" 16 ounces of white flour pasta per box. (*Id.* ¶¶ 10, 12, 14; Pl.'s Opp'n at 4-5.)

Because consumers have "become more nutritionally conscious," demand for pasta "has dropped severely" in recent years. (Compl. ¶ 8.) "[F]aced with declining consumer demand for its traditional white dry pasta products, including its Ronzoni brand," Defendant "introduced to the market a line of Ronzoni products "featuring healthier ingredients." (*Id.* ¶ 23.) Ronzoni's new brands include: Garden Delight®, Smart Taste®, Healthy Harvest®, Gluten Free®, and Super Greens® (collectively, the purportedly "healthy pastas"). (*Id.* ¶ 8.) Plaintiff claims these new healthy pastas are packaged in the "same dimension boxes as the traditional" wheat pastas," (*id.* ¶ 10), but with "substantially less pasta than before" (*id.* ¶ 24). More specifically, Defendant filled iconic-sized Ronzoni boxes "with [] approximately 25% less pasta than Plaintiff and consumers had previously received" when it introduced its healthier product line. (*Id.* ¶ 28.) For example, Ronzoni® Smart Taste Thin Spaghetti ("Smart Taste") boxes are packaged within a box that is the same size and price[5] as the Ronzoni® Thin Spaghetti No. 9. (*Id.* ¶ 26.) Nonetheless, Smart Taste contains only 12 ounces of pasta. Plaintiff alleges Defendant "misled [her] into believing [she]

---

[5] Plaintiff states ShopRite, for example, is selling Smart Taste and Spaghetti No. 9 "for the same price, $1.69." (Compl. ¶ 26.)

was buying the same volume of spaghetti regardless of which [variety] [she] purchased," (*id.* ¶ 27), because both healthy and white wheat products are sold on the same grocery store shelf. Though Plaintiff admits that the boxes containing the healthy pastas "do set forth the actual net weight on the product in small print on the bottom of the box," Plaintiff still claims that because consumers are not "carefully study[ing] the net weight number set forth in small print on the front of the box – and somehow realiz[ing] that they are no longer receiving the same quantity of Ronzoni pasta as before – consumers are being misled." (*Id.* ¶ 27.)

Plaintiff filed this lawsuit on behalf of herself and others similarly situated on August 3, 2016. (ECF No. 1.) Put simply, Plaintiff alleges that Defendant misleads consumers into paying a premium price for healthy pasta in violation of New York State consumer protection laws by relying "on consumers' familiarity with its traditional-sized [white flour] pasta boxes, garnered over many decades of marketing, to deceive consumers into thinking that they are purchasing the same quantity of pasta as they always have" often "at exactly the same price," when they purchase healthy pasta boxes. (*Id.* ¶ 14; *see also* ¶¶ 38, 40, 44, 46.)) Defendant moves to dismiss the Complaint in its entirety.

## DISCUSSION

As noted, Defendant moves to dismiss on several grounds. First, it argues that Plaintiff's state law claims are preempted by federal law and regulations. (Def.'s Mem. Law Supp. Mot. To Dismiss (ECF No. 16) ("Def.'s Mem.") 8-10.) Second, it moves, pursuant to N.Y. GBL § 349(d) (i.e., a safe harbor for defendants), which provides "a complete defense" whenever a challenged act or practice "complies with federal rules and regulations." (Def.'s Mem. 9.) Finally, Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all counts for failure to state a claim. (*Id.* 10-13.) The Court will address each argument in turn.

## A. Preemption

Defendant argues first that it is entitled to dismiss all of Plaintiff's claims because Plaintiff's claims are precluded by the Food, Drug, and Cosmetic Act of 1938 ("FDCA"). Defendant reasons that because its label complies with federal law and regulations, Plaintiff's "apparent claim that the net weight statements were too small to overcome her purported 'expectation' … that all pasta sold in similarly-sized boxes necessarily must contain the same volume of pasta" is "precluded." (Def.'s Mem. 9.)

Plaintiff contends "[t]his argument wholly overstates the scope of the Federal law pursuant to which the regulations at issue were promulgated." (Pl.'s Opp'n 9.) Moreover, Plaintiff clarifies that she is not "contend[ing] that Riviana has failed to comply with the applicable regulations governing the display of the net weight of product in its 'healthy' pastas packaging." (*Id*.) Instead Plaintiff argues "that [when] the packaging as a whole is misleading in a material way," (Pl.'s Opp'n 9), "it creates the impression that the customer is receiving more product than they really are," (*id*. at 9), which is a practice that is "not preempted by the FDCA's labeling requirements" (*id*. at 10). Moreover, Plaintiff relies on *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), for the proposition that a deceptive practice claim may proceed even when Defendant has complied with the FDCA's applicable labeling requirements. (Pl.'s Opp'n 10.)

Plaintiff is correct in so far as N.Y. GBL claims may survive even when manufacturers comply with the labeling laws. (*See* Pl.'s Opp'n 12.) It is well-established that "even if … the labeling meets the floor established by federal regulations, there is nothing to indicate that it could not still be misleading and therefore actionable under the state consumer protection laws." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 375-76 (E.D.N.Y. 2016). More to the point, nothing in the applicable federal laws "expressly

preempts state law claims for deceptive practices premised on an alleged failure to follow federal food labeling requirements." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 284 (S.D.N.Y. 2014). Therefore, the Court finds that Plaintiff's claims are not precluded by the FDCA. Accordingly, Defendant's motion for dismissal on this grounds is denied for the reasons discussed below.

*1. Regulatory Scheme*

The Food and Drug Administration (the "FDA") derives its authority to regulate food labels from two primary sources: the FDCA and the Nutrition Labeling and Education Act ("NLEA"). Under the FDCA, Congress granted the FDA power to ensure "foods are safe, wholesome, sanitary, and *properly labeled*." 21 U.S.C. § 393(b)(2)(A) (emphasis added); *Ackerman v. Coca-Cola Co.*, No. 09-CIV-0395 (JG) (RML), 2010 WL 2925955, at *2 (E.D.N.Y. July 21, 2010)). The FDCA expressly forbids the misbranding of food in interstate commerce. 21 U.S.C. § 331(a)-(c), (k). Section 343 of the FDCA sets forth circumstances under which food is considered "misbranded." 21 U.S.C. § 343. In general, a food[6] is "misbranded" if "any particular" of its labeling is "false or misleading." 21 U.S.C. § 343(a)(1).

In 1990, Congress amended the FDCA with the NLEA, which sought "to clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." *N.Y. State Restaurant Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009); Pub. L. No. 101-535, 104 Stat. 2353 (1990) (codified at 21 U.S.C. § 343 *et. seq.*). These statutes do not provide for a private right of action. *See* 21 U.S.C. § 337 (all proceedings "for the enforcement, or to restrain violations,

---

[6] For the purposes of the FDCA, "food" includes any "article [] used for food or drink for [a] [hu]man …and articles used for components of any such article." 21 U.S.C. § 321(f).

of this chapter shall be by and in the name of the United States" or, under limited circumstances, brought by a state); *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

The NLEA includes a lengthy express preemption clause with five subparts. 21 U.S.C. §343-1(a). All five subparts, however, impose the same preemptive standard: states are prohibited from imposing "requirements" relating to food that subject to exceptions and exemptions are not "identical" to an applicable federal food labeling standard.[7] For preemption purposes, "not identical to" "does not refer to the specific words" but instead to state obligations that either "differ" from or are "not imposed" by federal law. 21 C.F.R. §100.1(c)(4); *see also*, State Standards of Identity, Quality or Fill Regulations, 58 Fed. Reg. 3, 2463 (Jan. 6, 1993) (codified in 21 CFR Ch. 1) ("Preemption would occur only if the detailed information included in the State requirements imposes different or stricter requirements than provided for in § 101.105."). Therefore, the proper inquiry calls for determining whether any of Plaintiff's claims seek to impose requirements that are affirmatively different from an applicable federal requirement. *See, e.g., In re Pepsico Inc.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) ("Stated differently, "the only state requirements that are subject to preemption are those that are affirmatively different from the Federal requirements.").

### 2. *Preemption Analysis*

Turning to the merits, the Court notes that Defendant did not explain whether Plaintiff's claims were expressly preempted by federal law, or in the alternative, whether they are barred by implied conflict preemption. A defendant asserting preemption bears the burden of proving that it applies. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) ("Federal preemption is an

---

[7] In the "FDA's view, as reflected in [21 C.F.R.] § 100.1(c)(4), [] the fact that the State requirements contain more detail than found in the Federal regulation does not necessarily mean that the State requirements would be subject to preemption." State Standards of Identity, Quality or Fill Regulations, 58 Fed. Reg. 3, 2463 (Jan. 6, 1993) (codified in 21 C.F.R. Ch. 1).

affirmative defense upon which the defendants bear the burden of proof") (citations omitted).

Instead, Defendant argues that Plaintiff's claims are preempted because the label at issue discloses

the net quantity of contents in the *exact* manner required by FDA regulations: namely, the net

quantity[8] is displayed on the principal display panel,[9] 21 C.F.R. §§ 101.3(a), 101.105(a), the net

quantity statement is placed as a distinct item in the bottom 30 percent of the principal display

panel, it lines generally parallel with the base of the container, *id.* §§ 101.105(e), 101.105(f), *and*

the minimum type size complies with the calculations outlined in 21 CFR 101.105(h) and (i).[10]

(Def.'s Mem. 8-9.)  This argument presumes that any state-law claim requiring Defendant to

include *supplemental* statements about product quantity or to avoid misleading packaging tactics

is preempted by the FDCA and, consequently, misconstrues Plaintiff's claims.

Drawing all reasonable inferences in Plaintiff's favor – as the Court must – the Complaint

appears to challenge either Defendant's omission of supplemental statements about the product

weight or the use of the same size box.  In other words, Plaintiff contends that Defendants should

either supplement the label as to alert consumers that the healthy pasta boxes contain less product

or use a smaller box.  The new healthy pastas are allegedly packaged in a box that has contained

16 ounces "for decades."  (Compl. ¶ 5.)  "Unless consumers carefully study the net weight number

---

[8] The net quantity of contents is the statement on the label which provides the amount of food in the container or package.  It must be expressed in weight, measure or numeric count.  Generally, if the food is solid, it should be expressed in terms of weight.  21 C.F.R. 101.105(a)(b)(c).

[9] Manufacturers can either (1) place all required label statements on the front label panel (the "principal display panel") or (2) place certain specified label statements of the principal display panel and other labeling on the information panel (i.e., the label panel immediately to the right of the principal display panel, as seen by the consumer facing the product).  *See* 21 C.F.R. §§ 101.1 – 101.5, 101.9, and 101.105

[10] For the net quantity of statements, the minimum type size is the smallest type size that is permitted based on the space available for labeling on the principal display panel.  Manufacturers must determine the height of the type by measuring the height of the lower case letter "o" or its equivalent when mixed upper and lower case letters are used, or the height of the upper case letters when only upper case letters are used.  *See* 21 C.F.R. 101.105(h) and (i).  Plaintiff alleges that the boxes in question are "approximately 10 5/8 inches long, 2 ¾ inches wide, and 1 ¼ inches deep" (Compl. ¶ 5), "for a total of 29.2 square inches on the face containing the weight disclosures."  (Def.'s Mem. 9.)  When the area of the principal display panel is between 25 and 100 square inches, the minimum type size must be 3/16 inches (3.2 mm).  *See* 21 C.F.R. 101.105(h) and (i).

set forth in small print on the front of the box – and somehow realize that they are no longer receiving the same quantity of Ronzoni pasta as before – consumers are being misled by Riviana's deceptive practice of under filling its 'healthy' pasta boxes into paying a price premium for the alternatives." (Pl.'s Opp'n 6.)

Considering the first issue, in challenging Defendant's omission of supplemental statements about product weight, Plaintiff seeks to enforce Sections 349 and 350 of the N.Y. GBL. Here, state law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. Law § 349, and prohibits the "[f]alse advertising in the conduct of any business, trade or commerce …," N.Y. Gen. Bus. Law § 350. "New York Law expressly incorporated the standard imposed by the FDCA," and "provides that anything that complies with federal law and regulations *per se* complies with state law." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *4 (S.D.N.Y. Oct. 26, 2016); *see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 474 (S.D.N.Y. 2014) (persuaded by Plaintiff's reasoning that, *inter alia*, the N.Y. GBL § 349 is a statute of general applicability prohibiting deceptive practices and does not add any new requirements because the FDCA seeks to prohibit misbranding). Moreover, the NLEA states food shall be deemed misbranded "[i]f (1) its labeling is false or misleading in any particular, or (2) … its advertising is false or misleading in a material respect …." 21 U.S.C.A. § 343 (West); *see, e.g.*, *U.S. v. 24 Bottles Sterling Vinegar and Honey Aged in Wood Cider*, 338 F.2d 157, 159 (2d Cir. 1964) ("The distinguishing characteristic of a label is that, in some manner or another, it is presented to the

customer in immediate connection with his view and his purchase of the product.").  In other words, the federal and state laws at issue prohibit the false or misleading labeling of food items.[11]

Viewed in this light, the state-law duty Plaintiff seeks to enforce under N.Y. GBL is *identical* to Defendant's federal duty under the FDCA and NLEA: the duty to avoid misleading or false labeling.  The FDCA defines labeling to include "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m); *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG), 2010 WL 2925955, at *7 fn.12 (E.D.N.Y. July 21, 2010).[12]  Whether or not the omission of a supplemental statement, or choosing a larger box, rendered the accurate net weight label deceptive goes to the *merits* of the claim, not the question of federal preemption.  *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) ("To the extent [the defendant] claims that no consumer would be deceived ... this argument goes to the merits of [plaintiff's] assertion that she was deceived by the allegedly false or misleading label, not the question of federal preemption."); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 964 (9th Cir. 2016) (with respect to net weight claims and omission of a clarifying statement regarding amount of product that is actually usable); *Krommenhock v. Post Foods, LLC*, No. 16-CV-04958 (WHO), 2017 WL 2378029, at *12 (N.D. Cal. June 1, 2017) (stating that "a 'failure to warn' type of claim suggested by plaintiffs is not

---

[11] As for the second issue, regarding the intentionally misleading packaging, the Court declines to apply any of the relevant "slack fill" case law because Plaintiff expressly told the Court at a conference held on November 10, 2016, that she would not plead "slack fill" claims in her Complaint.

[12] The definition of "accompanying" has been interpreted broadly to include statements not attached to the product itself.  *See, e.g., Kordel v. U.S.*, 335 U.S. 345, 350 (1948) (no physical attachment between the label and product is necessary); *U.S. v. 24 Bottles Sterling Vinegar and Honey Aged in Wood Cider*, 338 F.2d 157, 159 (2d Cir. 1964) ("The distinguishing characteristic of a label is that, in some manner or another, it is presented to the customer in immediate connection with his view and his purchase of the product."); *see generally* Louis Altman and Malla Pollack, 1A *Callmann on Unfair Comp., Trademarks & Monopolies* § 5:9 (4th Ed. 2009) ("The original distinction between labels and other advertising matter has ... been blurred."); Sarah E. Taylor, and Harold J. Feld, *Promoting Functional Foods and Nutraceuticals on the Internet*, 54 Food & Drug L.J. 423, 446 (1999) (surveying case law and concluding "[i]f the matter is part of an integrated scheme to promote the product, with a readily discernible nexus between product sales and the matter, the representation will constitute labeling.")

expressly preempted, absent evidence that consideration of this type of affirmative warning was the focus of the FDA's rulemaking."). Because the N.Y. GBL does not amount to something "different from or in addition to" what federal law already requires regarding weight labeling in general, under 21 U.S.C. § 101.105, preemption does not bar Plaintiff's claim.[13] *See, e.g.*, *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1100-1102 (S.D. Cal. 2015).

## B. The Adequacy of Plaintiff's N.Y. GBL Claims

Although the Court concludes that federal preemption does not bar Plaintiff's state claims, this suit ultimately fails on the merits because Plaintiff cannot plausibly state that the alleged practice rendered Ronzoni's label "false or misleading" to the reasonable consumer.

### 1. Judicial Notice

Before considering Defendant's specific arguments regarding Plaintiff's N.Y. GBL claims, the Court must first consider whether it may take judicial notice of the documents and advertisements Defendant submitted at the same time as its Memorandum of Law. None of these documents were attached to the Complaint. While a court must generally treat a 12(b)(6) as one for summary judgment under Rule 56 when it relies on matters outside the pleadings,[14] the court may consider documents beyond the pleadings in deciding a motion to dismiss. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("In circumstances where 'a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration …, without converting the proceeding to one for summary judgment.").

---

[13] This is not the case of a N.Y. State statute requiring the net weight be displayed in 24-point font on the box if the product is sold in New York. Nor does it seek to add a warning about an unregulated aspect of the product. *See, e.g.*, Sciortino v. Pepsico, Inc., 108 F. Supp. 3d 780, 786 (N.D. Cal. 2015).

[14] Fed. R. Civ. P. 12(d).

Generally, a court may incorporate documents referenced where (1) plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, *and* (3) the document's authenticity or accuracy is undisputed. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) ("A document is "integral," if the plaintiff has "(1) 'actual notice' of the extraneous information and (2) 'relied upon the documents in framing the complaint.'"); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate [] that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in the original); *see also McLennon v. City of New York*, ___ F. Supp. 3d ____, 2016 WL 1089258, at *9 (E.D.N.Y. Mar. 18, 2016) ("To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'"); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

By the Court's count, Defendant requests that judicial notice be taken of several sources of extraneous information, comprising the following:

Packaging

(White Flour Pasta Line)

1. The principal display panel (the "front view") of the Ronzoni® Thin Spaghetti No. 9 (16 OZ) package (*See* Def.'s Mem. 3; *see also* Decl. Robert Shane Faucett Supp. Def.'s Mot. To Dismiss (ECF No. 17) ("Faucett Decl.") ¶ 5.)

2. The front view of the Ronzoni® Thin Spaghetti No. 9 (8 OZ) package (*See* Def.'s Mem. 3; *see also* Faucett Decl. ¶ 6.)

(Healthy Pasta Line)

3. The front view of the Ronzoni Smart Taste® Thin Spaghetti package (*See* Def.'s Mem. 2; *see also* Faucett Decl. ¶ 7.)

4. The front view of the Ronzoni Healthy Harvest® Ancient Grains Thin Spaghetti package (*See* Def.'s Mem. 5; *see also* Faucett Decl. ¶ 12.)

5. The front view of the Ronzoni Garden Delight® Spaghetti package (*See* Def.'s Mem. 6; *see also* Faucett Decl. ¶ 9.)

6. The front view of the Ronzoni Gluten Free® Thin Spaghetti package (*See* Def.'s Mem. 6; *see also* Faucett Decl. ¶ 10.)

7. The front view of the Ronzoni® SuperGreens™ Thin Spaghetti package (*See* Def.'s Mem. 6; *see also* Faucett Decl. ¶ 13.)

8. The front view of the Ronzoni Healthy Harvest® Whole Grain Thin Spaghetti package (*See* Def.'s Mem. 7; *see also* Faucett Decl. ¶ 11.)

Display

9. Examples of shelf tags used for Ronzoni® pasta products in Shop Rite Stores (*See* Def.'s Mem. 4; *see also* Faucett Decl. ¶¶ 14-15.)

Other Information

10. Declaration of Robert Shane Faucett in Support of Defendant's Motion to Dismiss For Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 17.)

Of these, the Court concludes that it can consider the first, third and fourth packaging submissions – that is the (1) Ronzoni® Thin Spaghetti No. 9 (16 OZ),[15] (3) Ronzoni Smart Taste® Thin Spaghetti package,[16] *and* (4) Ronzoni Healthy Harvest® Ancient Grains Thin Spaghetti[17] – as all are "incorporated by reference" in the Complaint, in that the Complaint discusses each at length, (*see* Compl. ¶¶ 5, 9-10, 12, 14-15, 23-24, 26), "mak[ing] 'a clear, definite and substantial

---

[15] *See* Compl. ¶¶ 5, 10, 12, 14, 23, 26; *see also* Pl.'s Opp'n 17.
[16] *See* Compl. ¶¶ 9, 14, 15, 24, 26.
[17] *See* Compl. ¶ 9, 14, 24, 26.

reference to the [information],'" *McLennon*, 2016 WL 1089258, at *9 (internal quotation marks omitted).[18] Lastly, the authenticity of the packages are not in dispute. However, the Court cannot consider Defendant's other packages or declaration.[19] This is so because, far from incorporating them by reference, *see McLennon*, 2016 WL 1089258, at *9, or being integral to the complaint through Plaintiff's actual notice of and reliance upon the ads in framing her complaint, *DeLuca*, 695 F. Supp. 2d at 60, Plaintiff discusses – and more importantly bases the allegations on – only three of the packages. With this issue resolved, the Court now turns to the merits of Defendant's motion.

### 2. The Merits of Plaintiff's Claims

Finally, as noted, Defendant moves to dismiss all of Plaintiff's claims, pursuant to Rule 12(b)(6) for failure to state a claim. A Rule 12(b)(6) motion challenges the sufficiency of the allegations in the complaint. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The

---

[18] The Court concludes that there is no need to consider the last two classes of exhibits and so does not analyze whether the Court can take judicial notice of them. Even if Defendant's packaging may have complied with federal, state, and model regulations, (*see* Def.'s Mem. 9-10), that does not prove the conclusion that a reasonable consumer could not have been misled by Defendant's representations. *Cf. Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *11–12 (S.D.N.Y. Aug. 12, 2016) (quoting *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[A] reasonable consumer might … focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega-3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label."). *Ackerman v. Coca-Cola, Co.*, No. 09-CV-0395, 2010 WL 2925955, at *16, 22-23 (E.D.N.Y. July 21, 2010) ("The fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled."). The Court also does not consider the content of the shelf tags because Plaintiff does not mention or cite the tags in the Complaint.

[19] Defendant submits a declaration from Robert Shane Faucett, Senior Vice President of the Sales and Marketing Department, in support of its motion to dismiss. (*See generally* Faucett Decl., ECF No. 17.) Although Defendant argues that it is within the scope of the materials that the Court may consider, (*see* Def.'s Mem. 2-4), the Court gives it no consideration.

purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) ("At the 12(b)(6) stage, [t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." (internal quotation marks omitted)). Accordingly, in conducting that test, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016), *reconsideration denied*, No. 16 CIV. 3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) (citing *Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 126 (S.D.N.Y. 2014)). The Court need not credit, however, "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. "[L]egal conclusions masquerading as factual conclusions will not suffice." *Achtman v. Kirby, McInerney & Squire*, *LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Here, Defendant seeks to dismiss Plaintiff's claims under N.Y. GBL Sections 349 and 350, which prohibit deceptive business practices and false advertising, (Def.'s Mem. 10-15), on the

ground that the conduct alleged is not materially misleading as a matter of law, and rather, Plaintiff's claims are objectively unreasonable. (Def.'s Opp'n 10.) The Court will address each argument in turn.

To state a *prima facie* claim under either Section, a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice. *See, e.g., City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 883 N.Y.S.2d 772, 911 N.E.2d 834 (2009) (Section 349); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450-51 (E.D.N.Y. 2007) (stating that the standards under Sections 349 and 350 are "substantively identical"). Claims brought under GBL § 349 are not subject to the heightened pleading requirements set forth in Rule 9(b). *Pelman ex. rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

It is undisputed that Plaintiff has met the first prong of her N.Y. GBL claims: there is no question that the sale of Ronzoni pasta constituted "consumer-oriented conduct."[20] This element "may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (citation omitted). "[E]ven the sale of high-end wine has been held sufficiently 'consumer-oriented' to

---

[20] As a threshold matter, the New York Court of Appeals has emphasized that "section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language." *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 643 (S.D.N.Y. 2016), *reconsideration denied*, No. 16 CIV. 3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) (citing *Blue Cross & Blue Shield of N.J., Inc.*, 785 N.Y.S.2d 399, 818 N.E.2d at 1144). As such, § 349 "appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad," as "[t]he reach of [this] statute [ ] provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York]." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 690 N.Y.S.2d 495, 712 N.E.2d 662, 665 (1999) (internal quotation marks omitted); see also *Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015) ("[T]he requirement that defendants engage in consumer-oriented conduct has been construed liberally."). In other words, the "statute seeks to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858,774 N.E.2d 1190, 1195 (2002) (internal quotation marks omitted).

support a claim under § 349." *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 643 (S.D.N.Y. 2016), *reconsideration denied*, No. 16-CV-3224 (JSR), 2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) (citing *Koch v. Greenberg*, 626 F. App'x. 335, 340 (2d Cir. 2015) ("[G]iven that the defendant provided wine to be sold at auction to other consumers similarly situated to [plaintiff], the consumer-oriented conduct requirement has been met.")).

As for the "materially misleading" prong, "[t]he New York Court of Appeal has adopted an objective decision of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y. 2d 20, 26 (1995)). Courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (citation and quotation marks omitted). "The entire mosaic" is "viewed rather than each tile separately." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) (citation omitted). The "issue may be a question of law or of fact as individual cases require." *Delgado*, 2014 WL 4773991, at *8 (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745 (1995)).

In asserting the product labels are misleading, Plaintiff argues that it is not appropriate for courts to resolve the claims where there are too many questions of how a reasonable consumer may perceive the label. (Pl.'s Opp'n 18.) She relies on two recent cases in the Eastern District of New York holding that "context is critical," "in determining whether a reasonable consumer would have been misled by a particular advertisement." *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *1 (E.D.N.Y. Sept. 26, 2016); *see also Belfiore v. Procter &*

*Gamble Co.*, 311 F.R.D. 29, 49 (E.D.N.Y.), *reconsideration denied*, 140 F. Supp. 3d 241 (E.D.N.Y. 2015) ("Courts typically view each allegedly misleading statement in light of its context on the product label or advertising as a whole. The entire mosaic is viewed rather than each tile separately.").

Defendant's counter-argument is two-fold: the label on the front of the package is accurately described and New York State requires products to be sold over shelf tags stating a unit price. (Def.'s Mem. 15). So that argument goes, because both the label and the shelf tag over which the box is was sold clearly disclose a 12-ounce net weight, Plaintiff is not a "rational consumer" if she was misled. (Def.'s Mem. 10, 13.) "A 'rational consumer,' would not 'simply assume' something about the product that a cursory inspection would show not to be true." (Def.'s Mem. 13) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016)). While Defendant avers "that a 'reasonable consumer" is only one who "read[s] the [product's] label" when assessing the net weight of a product, the Court will still evaluate Plaintiff's claim in light of its context as a whole.

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). The Court agrees with Plaintiff that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception. *See, e.g., Freeman*, 68 F.3d at 289-90 (upholding the dismissal of a challenge to a sweepstakes mailer where the mailer explicitly stated that the plaintiff would win only if he had the winning number); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2001) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully

disclosed...."). But the Court finds that a "reasonable consumer" would not be misled by a net weight disclosed in on such a contrasting label.[21]

According to Plaintiff the traditional box is so "ubiquitous" on the market, (Pl.'s Opp'n 3.), – meaning the same package since 1915 (*id*.) – there is a reasonable expectation that *all* Ronzoni dry pasta products, including "healthy" pastas, contain 16 net-ounces of product. (Pl.'s Opp'n 4.) But the Court agrees with Defendant that consumers who expect to receive 16 ounces of healthy pasta "solely because she has purchased different Ronzoni pasta products in similarly-sized boxes," is not reasonable. (*Id.* 1.) Considering the information of which the Court took judicial notice, the healthy box label sports several features that distinguish it from the alleged "traditional" line. The healthy pasta labels indicate that pasta contains different ingredients (e.g., "now with natural oat fiber"), the net weight is listed on a corner different than the traditional spaghetti, and the healthy boxes are tinted in a variety of vibrant colors that are visually quite distinct from the traditional yellow and blue colored-box. (Def.'s Mem. 3.) Moreover, all the pastas, whether healthy or white flour, are sold in a range of net-weight ounces. For example, the Ronzoni® Healthy Harvest Thin Spaghetti is sold both in 12-ounce and 16-ounce versions, "with the 16-ounce box prominently noting that it contains '33% more free' 'than [the] former 12 oz. package.'" (Def.'s Mem. 6-7.) The disclaimer appears in red font and is highlighted in yellow. (*Id.* 7.) Thus, there are sufficient differences between the boxes, and within the healthy line of pastas, that the practice, as alleged, is unlikely to mislead consumers.[22] But even assuming nearly identical boxes,

---

[21] The Court dismisses the Complaint on grounds that the Defendant has not engaged in actionable misrepresentation. Therefore, it does not need to address Defendant's additional arguments regarding the safe harbor provision of the N.Y. GBL.

[22] Satisfying the reasonable consumer standard "requires more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 818 F.3d 799, 806 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486, 495 (2003)); see also *Lavie*, 105 Cal. App. 4th at 508, 129 Cal. Rptr. 2d at 495 (holding that the phrase "likely to deceive" "indicates that the ad [or conduct] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be

the weight and price of the dry good are clearly the most material aspect of this type of product. *See, e.g., Forouzesh v. Starbucks Corp.*, No. 16-CV-3830 (PA) (AGRX), 2016 WL 4443203, at *3 (C.D. Cal. Aug. 19, 2016). Having considered the content of the label in context, the Court finds that Plaintiff's N.Y. GBL claims fail.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 15 and to close the case.

Dated: September 11, 2017
       White Plains, New York

                                    SO ORDERED:

                                      NELSON S. ROMÁN
                                United States District Judge

---

misled"). "A number of cases have analyzed the 'reasonable consumer' under [] California statutes at the same time and in the same manner as [N.Y. GBL] § 349" claims. *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *14 n. 22 (S.D.N.Y. Aug. 12, 2016) (collecting cases) (internal citations omitted). "Therefore, the weight of authority seems to suggest that California's 'reasonable consumer' inquiry can properly inform New York's." *Id.*